No. 13-1457

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

DAVID E. BANE,

Appellant,

v.

U.S. TRUSTEE,

Appellees.

BRIEF OF APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Gary M. Bowman, Esq.
VSB No. 28866
2728 COLONIAL AVE., STE. 100
Roanoke, Virginia  24015
        *Counsel for Appellant*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No.  13-1457          Caption: DAVID BANE V. U.S. TRUSTEE

Pursuant to FRAP 26.1 and Local Rule 26.1,

DAVID BANE
(name of party/amicus)


who is _____ APPELLANT _____, makes the following disclosure:
          (appellant/appellee/amicus)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐ YES ☑ NO
      If yes, identify all such owners:


i

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐ NO
If yes, identify any trustee and the members of any creditors' committee:

BANKRUPTCY CASE NO. 11-7011, U.S. BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF VIRGINIA

TRUSTEE GEORGE I. VOGEL, II

Signature: /S/ GARY M. BOWMAN                    Date:    16 MAY 2013

Counsel for: APPELLANT

## CERTIFICATE OF SERVICE
***************************

I certify that on ____20 MAY 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/S/ GARY M. BOWMAN                                 20 MAY 2013
(signature)                                            (date)

ii

TABLE OF CONTENTS

Corporate Disclosure Statement . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . v

Statement of Subject Matter and Appellate Jurisdiction . . . . 1

Statement of Issues Presented . . . . . . . . . . . . . . 1

> WHETHER THE DISTRICT COURT ERRED WHEN IT HELD THAT THE
> BANKRUPTCY COURT'S FINDING OF FACT WAS NOT CLEARLY
> ERRONEOUS BECAUSE IT WAS PLAUSIBLE THAT DAVID BANE
> TRANSFERRED THE ANGEL LANE PROPERTY TO HIS MOTHER EVEN
> THOUGH DELIVERY OF A DEED IS AN ESSENTIAL ELEMENT OF A
> TRANSFER AND THE ONLY EVIDENCE AT TRIAL REGARDING
> DELIVERY OF THE DEED ESTABLISHED THAT DAVID BANE DID
> NOT DELIVER THE DEED TO HIS MOTHER.

Statement of the Case . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . 3

    1. The U.S. Trustee's Complaint to Deny Discharge . . . . 3

    2. The Trial . . . . . . . . . . . . . . . . . . 4

        a. Mr. Bane's Pre-Trial Motions . . . . . . . . . 4

        b. The Evidence at Trial . . . . . . . . . 4

    3. The Bankruptcy Court Decision Denying Discharge
       Under 11 U.S.C. § 727(a)(2) . . . . . . . . . . . . 8

    4. The District Court Decision . . . . . . . . . . . 8

Summary of the Argument . . . . . . . . . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . 9

Standard of Review . . . . . . . . . . . . . . . . . . 9

Discussion of the Issues . . . . . . . . . . . . . . . . 9

I.    THE DISTRICT COURT ERRED BY REACHING THE
     LEGAL CONCLUSION THAT BANE TRANSFERRED THE
     ANGEL LANE PROPERTY TO HIS MOTHER BECAUSE
     THE EVIDENCE SHOWED THAT DELIVERY HAD NOT
     OCCURRED AND, THEREFORE, A TRANSFER DID
     NOT OCCUR . . . . . . . . . . . . . . . . . . 9

II.   THE DISTRICT COURT ERRED BY REACHING THE
      LEGAL CONCLUSION THAT THE EVIDENCE WAS
      SUFFICIENT TO PROVE THAT BANE TRANSFERRED
      THE ANGEL LANE PROPERTY TO HIS MOTHER
      WITH THE INTENT TO DEFRAUD HIS CREDITORS . . . . . . . . 16

Conclusion   . . . . . . . . . . . . . . . . . . . . . 21

Request for Oral Argument . . . . . . . . . . . . . . . 21

Addendum with Text of 11 U.S.C. § 727(a)(2) . . . . . . . . . 22

Certificate of Compliance . . . . . . . . . . . . . . . 26

Certificate of Service  . . . . . . . . . . . . . . . . 27

iv

# TABLE OF AUTHORITIES

## Cases

Capozzella v. Capozzella, 213 Va. 820, 196 S.E.2d 67
    (1973) . . . . . . . . . . . . . . . . . . . . . . 10

Commerce Bank & Trust Co. v. Burgess, 955 F.2d 134
    (1st Cir. 1992) . . . . . . . . . . . . . . . . . . 17

Crump v. Gilliam, 190 Va. 935, 59 S.E.2d 72 (1950) . . . . . 10

Cullinan Associates, Inc. v. Clements, 215 B.R. 818
    (W.D. Va. 1997) . . . . . . . . . . . . . . . . . . 17

In re Devers, 759 F.2d 751 (9th Cir. 1985) . . . . . . . . 17

Enright v. Bannister, 195 Va. 76, 77 S.E.2d 377 (1953) . 10, 11

Farouki v. Emirates Bank Int'l, 14 F.3d 244
    (4th Cir. 1994) . . . . . . . . . . . . . . . . . . 17

First Beverly Bank v. Adeeb, 787 F.2d 1339 (9th Cir. 1986) . 17

Gilbane Bldg Co. v. Fed. Reserve Bank, 80 F.3d 895
    (4th Cir. 1996) . . . . . . . . . . . . . . . . . . 9

Leftwich v. Early, 115 Va. 323, 328, 79 S.E. 384 (1913) . . . 10

Lockhart v. Edel, 23 F.2d 912 (4th Cir. 1928) . . . . . . . 16

Johnston v. Johnston, 63 F.2d 24 (4th Cir. 1933) . . . . . . 16

Mumpower v. Castle, 128 Va. 1, 104 S.E. 706 (1920) . . . . . 10

Roberts v. W.P. Ford & Son, Inc., 169 F.2d 151 (4th Cir.
    1948) . . . . . . . . . . . . . . . . . . . . . . . 16

Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) . . . . . 17

Seibel v. Rapp, 85 Va. 28, 31, 6 S.E. 478, 479 (1888) . . . . 11

In re Smoot, 265 B.R. 138, 142 (Bankr. E.D. Va. 1999) . . . . 17

United States v. Han, 74 F.3d 537, 540 n.1 (4th Cir. 1996) . . 9

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The Bankruptcy Court had subject matter jurisdiction over this case, which is an action by the United States Trustee to deny the debtor a bankruptcy discharge, pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

The District Court had jurisdiction over the appeal of the Bankruptcy Court's final order denying the debtor a discharge pursuant to 28 U.S.C. § 158(a)(1)

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1291 because this is an appeal from the District Court's final order of March 11, 2013 affirming the Bankruptcy Court's denial of appellant David Bane's bankruptcy discharge.

This is an appeal from a final order of the District Court, dated March 11, 2013. (JA 411).  A Notice of Appeal was due thirty days after the entry of the final order.  Fed. R. App. App. 4(a)(1)(A).  The appellant timely filed his Notice of Appeal on April 5, 2013. (JA 412).

## STATEMENT OF ISSUES PRESENTED

WHETHER THE DISTRICT COURT ERRED WHEN IT HELD THAT THE BANKRUPTCY COURT'S FINDING OF FACT WAS NOT CLEARLY ERRONEOUS BECAUSE IT WAS PLAUSIBLE THAT DAVID BANE TRANSFERRED THE ANGEL LANE PROPERTY TO HIS MOTHER EVEN THOUGH DELIVERY OF A DEED IS AN ESSENTIAL ELEMENT OF A TRANSFER AND THE ONLY EVIDENCE AT TRIAL REGARDING DELIVERY OF THE DEED ESTABLISHED THAT DAVID BANE DID NOT DELIVER THE DEED TO HIS MOTHER.

## STATEMENT OF THE CASE

David Bane,[1] the bankrupt debtor and appellant, filed

---

[1]  All references herein to "David Bane," "David," "Bane," and "Mr. Bane" refer to the appellant David Bane.  References to

Chapter 7 Bankruptcy Case 10-71591 on July 2, 2010. (JA 2 ¶ 10) to stop a foreclosure scheduled for that date. (JA 120). The case was dismissed on November 9, 2010 because Mr. Bane had not completed the required pre-petition counseling prior to filing the case. (JA ¶ 13).

Mr. Bane filed this bankruptcy case, his second case, on January 21, 2011. (JA 2 ¶ 4).

The case trustee, George I. Vogel II, filed Adversary Proceeding 11-07016 to avoid Mr. Bane's transfer to his mother of a 90% interest in real property on Angel Lane in Roanoke County prior to the filing of the January 21, 2011 bankruptcy case. (JA 448, Docket Entry 25). The Court entered an order on June 21, 2011 finding that Mr. Bane's transfer to his mother was a preferential transaction within the meaning of 11 U.S.C. § 547 and avoiding the transfer. (JA 450, Docket Entry 44).

The United States Trustee filed the Adversary Proceeding from which this appeal originated on March 15, 2011, seeking to deny the debtor a discharge under 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4). (JA 1). A trial of the case was scheduled for December 13, 2011. (JA 419; Docket Entry 7), but Mr. Bane's attorney withdrew on December 13, 2011, the day of trial. (JA 421; Docket Entry 33). The trial was continued to May 15, 2012. (JA 422; Docket Entry 41). The debtor represented himself pro se at trial. The Bankruptcy Court issued its Decision and Order on

---

his brother, Roy Bane, specifically identify him as "Roy" or "Roy Bane."

2

June 13, 2012. (JA 437; Docket Entry 206), denying Bane a discharge under 11 U.S.C. § 727(a)(2) and § 727(a)(4).

Mr. Bane filed a motion for reconsideration, but the Bankruptcy Court denied the motion on August 1, 2012. (JA 440; Docket Entry 245).

He timely filed an appeal to the District Court of the Bankruptcy Court's June 13, 2012 order. (JA 440; Docket Entry 244).

The District Court dispensed with oral argument. (J.A. 410 n.6). The District Court affirmed the Bankruptcy Court's decision on the grounds that the evidence supported the conclusion that Bane was not entitled to a discharge under 11 U.S.C. § 727(a)(2) because he transferred property prior to the filing of the bankruptcy and that it was unnecessary to determine whether he was not entitled to a discharge under 11 U.S.C. § 727(a)(4). (J.A. 406).

STATEMENT OF FACTS

1. The U.S. Trustee's Complaint to Deny Discharge.

On March 15, 2011, the United States Trustee filed a Complaint to Deny Discharge, alleging two counts for relief. (JA 1).

Count I alleged that Mr. Bane should be denied discharge pursuant to 11 U.S.C. § 727(a)(2) because his transfer to his mother of a 90% interest in property on Angel Lane in Roanoke County was "intended to defraud his unsecured creditors and/or the Chapter 7 trustee." (JA 6-8).

3

## 2. The Trial.

### a. Mr. Bane's Pre-Trial Motions.

Trial was originally scheduled for December 13, 2011. (JA 419; Docket Entry 7), but Mr. Bane's attorney, Henry Clarke IV, withdrew on December 13, 2011, the day of trial. (JA 421; Docket No. 33). The trial was continued to May 15, 2012. (JA 422; Docket No. 41). The debtor represented himself pro se at the trial on May 15.

### b. The Evidence at Trial.

The evidence at trial showed that David Bane purchased real property on Angel Lane in Roanoke County from his mother in 2007. (JA 320; Tr. 107, lines 15-16). He paid for the property by signing a note in favor of his mother. Id. He also signed a deed of trust to secure the note. Prior to the closing, Mr. Bane obtained a line of credit from Community Trust Bank, which was to have a second mortgage on the property. The debtor's brother, Roy Bane, the attorney-in-fact for their mother, hired Star City Title Company to draft and record the documents, with the intention that the mother's deed of trust would be recorded first and Community Trust's deed of trust would be recorded second. Roy discovered several years after the transfer that "[t]hey didn't record it." (JA 322; Tr. 109: 1-6). Star City recorded only Community Trust's deed of trust and did not record the mother's deed of trust. The effect was that Community Trust had the only mortgage on the property and the mother, who should have been in first place, was unsecured. (JA 329; Tr. 116:15-17).

4

Mr. Bane later defaulted in payment of his debt to Community Trust Bank. He sought to sell the property to pay the bank and his mother, and he intended to file bankruptcy only if necessary to stop a foreclosure. (JA 303; Tr. 90:7-91:4)). A foreclosure sale was scheduled for July 2, 2010. (JA 435). Mr. Bane filed Chapter 7 Case No. 10-71591 at the last minute on July 2, 2010 to stop the foreclosure scheduled for that date. The July bankruptcy case was dismissed on November 9, 2010 because Mr. Bane had not completed the required pre-petition counseling prior to filing the case. (JA 3 ¶ 13).

By the time the July case was dismissed, Mr. Bane had found potential buyers for the property, the Dyers. (JA 301; Tr. 88:22-89:15). However, the bank scheduled a second foreclosure sale for January 20, 2011. (JA 435).

The uncontroverted testimony of Michael Torrence, the real estate broker who was handling the sale of the property, was that Mr. Bane planned to file bankruptcy only if necessary to stop the foreclosure scheduled for 11:00 a.m., January 20, 2011. (JA 303-304; Tr. 90:7-91:4). Torrence testified that Mr. Bane was "going to file bankruptcy if we did not have something in place" to stop "a foreclosure coming up." (JA 303; Tr. 90:13-14). However, the Dyers submitted a contract to purchase the property on January 20, 2011. (JA 326; Tr. 113:16-114:2), the day of the scheduled foreclosure sale, and the bank voluntarily cancelled their sale. (JA 333; Tr. 120:8).

Roy Bane testified, in response to the debtor's questions,

5

that the real estate broker said that the Dyers would buy the
property:

> THE DEBTOR: Was there any--was it your understanding
> that the property was going to be sold to prevent a
> foreclosure or prevent a bankruptcy?  What was your
> understanding around the sale of the property?
>
> ROY BANE: Absolutely.  They thought it was a guaranteed
> sale.  I mean, they didn't use the word guaranteed;
> they said it was--they felt comfortable these were good
> faith purchasers, that a sale would be eminent [sic],
> that they were just trying to negotiate and to--my
> recollection they only received--they received a first
> offer back in January, the 20th, I believe was the
> first offer the Dyers made. (JA 326-327; TR 113:16-
> 114:2).

Bane lived with his 87-year-old mother. (JA 333; Tr. 120:21-
22).  His bankruptcy schedules, which were admitted at trial as
U.S. Trustee's Exhibit 10, show that he and his mother have the
same address. (JA 429).  After the January 20 foreclosure sale
was cancelled, Mr. Bane executed on January 21 a quitclaim deed
(which had been prepared in 2010, after the prior bankruptcy was
dismissed) conveying to his mother a 90% interest in the property
to remedy in part the injury his mother suffered when her deed of
trust was not properly recorded. (JA 332; Tr. 119).  Mr. Bane did
not record the quitclaim deed, but left it in the upstairs office
of his mother's house, where he also lived.  Later that day, Roy
Bane (Mr. Bane's brother and the trustee of their mother's trust
(JA 315; Tr. 102:1-6)), visited his mother downstairs and then,
after visiting his mother, went upstairs to the office.  Roy saw
the deed "upstairs" in the office where David worked. (JA 50 ¶
9).  Roy took the deed to the Roanoke County clerk's office, and
recorded it because he thought that David was not going to file

6

bankruptcy.  Roy testified that he found the deed and recorded it
without David's knowledge. (JA 50; JA 334:1-3).  Roy testified
that he thought that his brother was not going to file bankruptcy
because the foreclosure had been cancelled and he thought the
property was going to be sold to the Dyers. (JA 332; Tr. 119:18-
121:3).

    The Dyers made a firm offer to purchase the property, and
submitted a contract to purchase the property. (JA 160-167).
However, the Dyers' attorney sent attorney Henry Clarke an email
later that day indicating that they could not reach "an agreeable
number with Mr. Bane" but that the Dyers "may still be
interested" before a sale to someone else occurred. (JA 372; Tr.
159:10-17).  There was no evidence at trial that Mr. Bane knew of
the email.  In fact, the real estate broker, Michael Torrence,
testified at trial that Torrence did not tell Mr. Bane that the
Dyers had cooled on the deal at that time. (JA 308; Tr. 95:7-10).
Torrence continued to negotiate with the Dyers even after the
bankruptcy was filed and the bankruptcy trustee finally sold the
property at auction. (JA 305; Tr. 92:20-93:20).

    The bankruptcy petition was filed the next day, January 21,
by attorney Clarke from his office in Bedford, apparently because
Clarke learned that the Dyer sale was going to go through.

    The Angel Lane property was listed on the bankruptcy
schedules, with a value of $1,000,000.00, with liens against it
of $235,000.00. (JA 81).  The transfer of a 90% interest in the
property to Mr. Bane's mother was not listed or described in the

7

bankruptcy schedules because the transfer had not yet occurred when Mr. Bane prepared the schedules so that they would be ready to be filed to stop the scheduled January 20 sale.

### 3. The Bankruptcy Court Decision Denying Discharge Under 11 U.S.C. § 727(a)(2).

The Bankruptcy Court denied Mr. Bane's discharge under 11 U.S.C. § 727(a)(2) because it found that he transferred a 90% interest in the Angel Lane property to his mother prior to the filing of the January 21, 2011 bankruptcy.[2] (JA 396). The Bankruptcy Court did not consider whether Mr. Bane had delivered the deed to his mother.

### 4. The District Court Decision.

The District Court affirmed the Bankruptcy Court's conclusion that Bane transferred the property with the intent to defraud his creditors because the facts were sufficient to support that conclusion. The District Court did not address whether the facts established that Bane had delivered the deed to his mother. (JA 406-410).

### SUMMARY OF ARGUMENT

The Bankruptcy Court committed error, subject to a de novo standard of review, when it jumped to the legal conclusion that Bane transferred the Angel Lane property to his mother when Bane's evidence showed that he did not deliver the deed to his

---

[2] The bankruptcy court also denied Mr. Bane's discharge under 11 U.S.C. § 727(a)(4) and Mr. Bane appealed that decision to the District Court. The District Court affirmed the denial of the discharge under § 727(a)(2) and stated that it was not necessary to reach the § 727(a)(4) issues. (JA 407 n.2).

mother.

The Bankruptcy Court erred, subject to the clearly erroneous standard of review, when it found that the U.S. Trustee's evidence was sufficient to show that Bane had actual intent to transfer the Angel Lane property prior to the bankruptcy for the purpose of defrauding his creditors when the uncontroverted direct evidence showed that he did not intend to deliver the deed to his mother prior to filing bankruptcy.

### ARGUMENT

### STANDARD OF REVIEW

This Court reviews the trial court's decision on mixed questions of law and fact under "a hybrid standard, applying to the factual portion of each inquiry the same clearly erroneous standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts. Gilbane Bldg Co. v. Fed. Reserve Bank, 80 F.3d 895, 905 (4th Cir. 1996); United States v. Han, 74 F.3d 537, 540 n.1 (4th Cir. 1996).

### DISCUSSION OF THE ISSUES

I.    THE DISTRICT COURT ERRED BY REACHING THE LEGAL CONCLUSION THAT BANE TRANSFERRED THE ANGEL LANE PROPERTY TO HIS MOTHER BECAUSE THE EVIDENCE SHOWED THAT DELIVERY HAD NOT OCCURRED AND, THEREFORE, A TRANSFER DID NOT OCCUR.

The District Court erred by reaching the legal conclusion that Bane was properly denied a discharge under 11 U.S.C. §727(a)(2) because he transferred the Angel Lane property to his mother because there was no factual basis to reach that legal conclusion.

9

11 U.S.C. §727(a)(2) provides that a bankruptcy court may
deny a bankruptcy discharge to a debtor who transferred property
with the intent to defraud his creditors or an officer of the
bankruptcy estate.  A copy of 11 U.S.C. § 727 is attached to this
brief as an Addendum.

Under Virginia law, a transfer of property is not made until
a deed is "delivered."  Capozzella v. Capozzella, 213 Va. 820,
823, 196 S.E.2d 67, 70 (1973)("for a deed to pass title, there
must be delivery").  In Capozzella, the Virginia Supreme Court
relied on a long line of cases that addressed what constitutes
delivery of a deed.  The court cited Enright v. Bannister, 195
Va. 76, 79, 77 S.E.2d 377, 379 (1953) for the proposition that
delivery may be actual or constructive and may be "proved by
direct evidence or inferred from circumstances." 213 Va. at 823,
196 S.E.2d at 70.

A found deed may not be considered delivered and is not
effective unless there is evidence that the grantor intended that
the deed be delivered.  Leftwich v. Early, 115 Va. 323, 328, 79
S.E. 384, 386 (1913).  Acknowledgement of the deed before a
notary makes no difference if there is no intention of delivery.
Mumpower v. Castle, 128 Va. 1, 13-14, 104 S.E 706, 710 (1920).

In Crump v. Gilliam, 190 Va. 935, 59 S.E.2d 72 (1950), the
court held that delivery of a found deed had not occurred, even
though the deed was left in the home of the grantee.  In 1925,
Crump, a "colored" preacher, conveyed his house by deed of gift
to his wife so that he could honestly tell his parishioners that

10

he had no property to pledge for church bonds.  Later, his wife prepared and executed a deed re-conveying the property to him so that if she died he could record the deed.  According to Crump, his wife had handed the deed to him eleven years before her death and he then handed it back to her for safekeeping.  His testimony was uncorroborated.  Id. at 74., 59 S.E.2d at 939.

When the wife died, her sister and the sister's daughter found the deed in a drawer, unrecorded.  The Chancery Court of Richmond held that the deed could not then be recorded because it had not been delivered and "was wholly ineffectual."  Id. at 74, 59 S.E.2d at 941.

When a deed is recorded, a Court may presume that it has been delivered, subject to rebuttal.  Enright v. Bannister, 195 Va. 76, 80, 77 S.E.2d 377, 380 (1953).  The presumption of delivery may be rebutted by proof that there was no delivery.  Id.; Seibel v. Rapp, 85 Va. 28, 31, 6 S.E. 478, 479 (1888).

Here, the District Court concluded that Bane transferred the Angel Lane property to his mother without considering whether Bane had rebutted the presumption of delivery, even though he had specifically pleaded that no delivery occurred and the evidence showed that deed was not delivered.  The District Court's analysis was, simply, that a transfer had occurred because the deed was recorded.  The District Court wrote that "the deed was recorded in the Roanoke County Clerk's Office." (JA 407).  In the next sentence of its opinion, the District Court characterized the recordation of the deed as David Bane's transfer, by stating:

11

"Bane did not disclose his transfer in his statement of financial affairs." The District Court jumped to the conclusion that a transfer occurred based only on the Bankruptcy Court's finding of fact that the deed was recorded. The District Court did not make a finding that David Bane delivered it to his mother or to his brother Roy for recordation.

The evidence in the record here shows that David did not deliver the Angel Lane deed to his mother. David squarely raised the delivery issue before the bankruptcy court. In paragraph 14 of his verified answer, he wrote:

> Defendant admits that on December 31, 2010, he prepared a deed to his mother, in contemplation of a sale of the property, and executed the deed before the filing of the petition, but denies that he delivered or recorded the deed or had knowledge of the recording at the time of the Section 341 hearing. (JA 32).

The evidence before the bankruptcy court showed that David Bane lived at his elderly mother's house. His bankruptcy schedules, which were admitted as U.S. Trustee's Exhibit 10, show that he and his mother have that same address. (JA 429). The record shows that Roy Bane, David's brother, is attorney-in-fact (JA 315; Tr. 102:1-6) for their 87-year old mother. (JA 333; Tr. 120:21-22). In the affidavit attached to the debtor's verified answer, Roy Bane testified that:

> On January 21, 2011, Friday, I visited with my mother and later went upstairs. Due to Mrs. Bane's age and physical condition, I generally come and go as I please and have a key to the house. As I was leaving the office, I noticed the quitclaim deed to Mrs. Bane and I took the deed and I personally recorded the deed on behalf of Martha Bane as her Power of Attorney in the Roanoke County Circuit Court Clerk's Office. . . . When David told me of the controversy with the

12

Bankruptcy Court I informed him that I had recorded the
deed in preparation of the pending sale of the
property. My brother had no knowledge that the deed
had been recorded until after his bankruptcy case. (JA
49-50).

At trial, Roy's testimony began with the premise that he,
Roy, had recorded the deed. David asked: "Do you remember what
day you filed that with the court?" (JA 334; Tr. 121:4-6). The
U.S. Trustee could have objected that the foundation had not been
properly laid at trial that Roy, not David, had found the deed
and recorded it, but the U.S. Trustee did not object, implicitly
accepting the statement made by Roy in his affidavit that he had
found the deed--the truth that Roy had found the deed and
recorded it was not in dispute.

Roy testified that David did not know that Roy recorded the
quitclaim deed. He testified at trial in response to David's
questions, "I didn't really tell you after I did it simply
because you were claiming an exemption of 750,000 dollars and
that screwed it up." (JA 334; TR. 121:1-3). Roy testified that,
at the time he recorded the deed, he thought David was not going
to file bankruptcy because he thought the sale to the Dyers was
going to go through: "It was my understanding that the sale was
going to go through. The sale was going to go through." (JA 333,
Tr. 120:1-2). He also said, "It served no purpose to record that
deed knowing if you're going into bankruptcy for the simple
reason, she got nothing. She would get nothing." (JA 333; Tr.
120:23-25).

The U.S. Trustee did not cross-examine Roy about, or

13

otherwise contest, Roy's statement in his affidavit, which had been previously filed with the bankruptcy court, that he did not deliver the deed to Mrs. Bane or Roy's trial testimony that he found the deed upstairs in his mother's house, that he did not tell David before he recorded it, and that he would not have recorded it if he knew David was going to file bankruptcy because it undercut David's claim of exemptions.

Roy's testimony established that David did not deliver the deed to his mother. It shows only that David prepared the deed in case the Dyer sale went through. It shows conclusively that David did not know, or intend, that their mother receive the deed prior to David's bankruptcy because the deed "screwed up" David's bankruptcy exemptions and was worthless if David filed bankruptcy.

There was not one scintilla of evidence which showed that the grantee, Mrs. Bane, ever saw the deed, much less that David delivered it to her. Further, there was no evidence that the deed had ever been delivered to Roy, the mother's attorney-in-fact.

To the contrary, the evidence establishes that David did not intend to deliver the deed unless the sale with the Dyers was going to go through. If David had intended to record the deed, he would have recorded it. The fact that David did not record it is the most conclusive evidence of David's intention.

David's quitclaim deed was a found deed, exactly like the deed in <u>Crump</u>. The fact that the deed was acknowledged is not

14

dispositive, as the Virginia Supreme Court held in <u>Mumpower</u>.

However, the District Court misanalyzed the legal issue regarding delivery of the deed. This is revealed by the two contradictory passages in the Court's analysis of the issue. It wrote that:

> Bane argued that although he had indeed executed a quitclaim deed in his mother's name in case the offer to purchase the property had gone through as planned on January 20, 2011, he never delivered the deed to his mother. Rather, Bane asserted that his brother found the deed at their mother's home, assumed the January 20th sale [to the Dyers] would occur and that Bane would not would not file for bankruptcy, and then filed that deed without Bane's knowledge." (JA 408).

In the next sentence, the Court wrote: "Bane did not argue . . . that the transfer did not take place during the year preceding his filing of a Chapter 7 bankruptcy petition." (JA 408). The Court did not recognize that no transfer could have occurred under Virginia law prior to the bankruptcy since Bane did not deliver the deed to his mother. The District Court did not reject Bane's argument that he did not deliver the deed; the Court merely failed to recognize that the non-delivery of the deed meant that no transfer occurred, even though Roy Bane recorded the deed outside of David Bane's knowledge.

The court mistakenly jumped to the conclusion that a transfer was made merely because the deed was recorded by Roy Bane, and did not think through or address David Bane's defense that the deed had not been delivered even though David had rebutted the presumption of delivery. The Court should have held that no transfer occurred because no delivery of the deed had

15

been made.

The District Court's conclusion of law that a transfer occurred should be reviewed by this Court de novo and reversed. This Court need not determine whether the District Court was clearly erroneous in finding that the bankruptcy court's findings of fact were plausible because the findings of fact made by the bankruptcy court, even if plausible, could not support the legal conclusion that a transfer occurred since the only evidence regarding delivery of the deed established that David Bane did not deliver the deed to his mother or to his brother and, therefore, a transfer of the property did not occur.

II.  THE DISTRICT COURT ERRED BY REACHING THE LEGAL CONCLUSION THAT THE EVIDENCE WAS SUFFICIENT TO PROVE THAT BANE TRANSFERRED THE ANGEL LANE PROPERTY TO HIS MOTHER WITH THE INTENT TO DEFRAUD HIS CREDITORS.

The District Court also erred by reaching the legal conclusion that the evidence was sufficient to support denial of Mr. Bane's discharge under 11 U.S.C. §727(a)(2) because the evidence did not show that he transferred the Angel Lane property with the intent to defraud his creditors.

11 U.S.C. §727 must be construed liberally in favor of the debtor and strictly against the person objecting to discharge. This Court has repeatedly stated that Congress intended that a debtor be discharged unless the statutory grounds for denial of discharge are "made out clearly." Lockhart v. Edel, 23 F.2d 912, 913 (4th Cir. 1928).  Other circuits are in accord. Johnston v. Johnston, 63 F.2d 24, 26 (4th Cir. 1933); Roberts v. W.P. Ford &

16

Son, Inc., 169 F.2d 151, 152 (4th Cir. 1948); Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993); Commerce Bank & Trust Co. v. Burgess, 955 F.2d 134, 136 (1st Cir. 1992); First Beverly Bank v. Adeeb, 787 F.2d 1339, 1342 (9th Cir. 1986). In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985). The evidence must show that the debtor had actual intent to defraud his creditors; whether intent existed is a matter of fact. In re Smoot, 265 B.R. 138, 142 (Bankr. E.D. Va. 1999); Cullinan Associates, Inc. v. Clements, 215 B.R. 818, 821 (W.D. Va. 1997). The party objecting to discharge must prove by a preponderance of the evidence that the debtor is not entitled to discharge. Farouki v. Emirates Bank Int'l, 14 F.3d 244, 249 n.17 (4th Cir. 1994).

Here, the U.S. Trustee did not prove by a preponderance of the evidence that Mr. Bane intended to transfer the Angel Lane property prior to filing bankruptcy in order to defraud his creditors. This is a different issue than the issue raised above in Argument One; above, Bane points out that he carried his burden of rebutting the presumption that a transfer of the Angel Lane property occurred and, since no transfer occurred, he could not have violated § 727(a)(2). Here, Bane argues that the U.S. Trustee did not carry its burden of proving by a preponderance of the evidence that Bane had actual intent to defraud his creditors because the U.S. Trustee did not present evidence that was of greater weight than Bane's evidence that he prepared the deed expecting the Dyer sale to go through and that he did not deliver the deed to his mother.

17

The greater weight of evidence did not establish that Bane intended to transfer the property. In fact, no direct evidence proved that Bane intended to transfer the property. The transfer could not be made without the deed. Roy Bane's sworn testimony established that David Bane did not give his mother or brother the deed (JA 49-50), tell his brother or his mother to record the deed (JA 49-50), that David did not know that his brother was going to record the deed (JA 49-50), and that David did not know that the deed had been recorded prior to the filing of the bankruptcy petition. (JA 49-50; JA 32 ¶ 14; JA 334, Tr. 121:1-6). There is no evidence in the record that contradicts Roy Bane's testimony.

The preponderance of the evidence did not prove that Bane had actual intent to transfer the property before filing bankruptcy. There was direct evidence that he contemplated transferring the property to his mother prior to the Dyer sale going through, which would have obviated the need for him to file bankruptcy; there was no evidence that he contemplated transferring the property prior to filing bankruptcy. There was direct evidence that he prepared a deed in case he needed to record it prior to the Dyer sale going through; there was no evidence that he delivered it to his brother or mother or that he prepared the deed because he thought he was going to file bankruptcy. There was direct evidence that Bane did not know that his brother found the deed and recorded it prior to the filing of the bankruptcy.

18

There was circumstantial evidence, which the District Court characterized as "the timeline" (JA 4)--a timeline that excluded the fact that Bane never delivered the deed to his mother or brother----that the court construed to contradict the direct evidence. But the circumstantial evidence could not have outweighed the direct evidence if the direct evidence had been given any weight, which it apparently was not given. The bankruptcy court and the District Courts jumped to the incorrect conclusion that the recordation of the deed was conclusive proof of a transfer, even though the deed was not delivered. It was wrong for the bankruptcy court to disregard entirely the direct evidence that Bane prepared the deed expecting that the Dyer sale would go through and that he would not file bankruptcy, disregard entirely the evidence that Bane did not deliver the deed, without stating any justification for disregarding such evidence, and find fraud based entirely on other circumstantial evidence. It was error for the District Court to find that the evidence was sufficient, without even considering that Bane's failure to deliver the deed meant that no transfer occurred.

The bankruptcy court and the District Court relied entirely on circumstantial evidence, to conclude that the bankruptcy court's finding of intent was not clearly erroneous. Neither lower court took cognizance of Roy Bane's uncontroverted testimony that he found the deed and recorded it without David Bane's knowledge or consent. Even if the circumstantial evidence in the District Court's timeline are accepted as true, the

19

directly-proved evidence that David Bane did not intend that the deed be recorded and that he did not know that the deed had been recorded prior to the filing of the bankruptcy petition precluded a finding of fact that David intended to transfer the property prior to the bankruptcy so as to defraud his creditors.

In light of this Court's prior statements in <u>Lockhart</u>, <u>Johnston</u>, and <u>Roberts</u>, which this Court has never disavowed, that the bankruptcy discharge provisions must be construed liberally in favor of the debtor and strictly against the person objecting to discharge, a preponderance of the evidence was not established by the U.S. Trustee. The court's balancing of the evidence was tantamount to weighing unfavorable circumstantial evidence against Bane and not placing favorable direct evidence on the scale. Such balancing was not a construction of the evidence "liberally in favor of the debtor" and "strictly against the person objecting to discharge;" the balancing was the opposite of this standard.

The District Court's conclusion that the bankruptcy court's factual finding that David Bane had actual intent to transfer the property to defraud his creditors in bankruptcy was plausible is clearly erroneous. It is not plausible that David Bane had actual intent to transfer the property to defraud his creditors in bankruptcy because the only direct evidence on the issue established, without contradiction, that he did not have that intent.

20

CONCLUSION

For these reasons, the appellant prays that this Court will reverse the District Court's Order of March 11, 2013 which held that Mr. Bane was properly denied a discharge under 11 U.S.C. § 727(a)(2) and remand this case for consideration of whether he was properly denied a discharge under 11 U.S.C. § 727(a)(4).

REQUEST FOR ORAL ARGUMENT

The appellant requests oral argument.

Respectfully Submitted,

DAVID E. BANE

By: /s/ GARY M. BOWMAN

Gary M. Bowman, Esq.
VSB No. 28866
2728 Colonial Ave., Ste. 100
Roanoke, Virginia  24015
Tel: (540) 343-1173

21

A D D E N D U M

**11 USC § 727 - Discharge**

Current through Pub. L. 112-131.

(a) The court shall grant the debtor a discharge, unless—

(1) the debtor is not an individual;

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;

(B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or

(C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify;

(7) the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider;

(8) the debtor has been granted a discharge under this section, under section 1141 of this title, or under section 14, 371, or 476 of the Bankruptcy Act, in a case commenced within 8 years before the date of the filing of the petition;

(9) the debtor has been granted a discharge under section 1228 or 1328 of this title, or under section 660 or 661 of the Bankruptcy Act, in a case commenced within six years before the date of the filing of the petition, unless payments under the plan in such case totaled at least—

(A) 100 percent of the allowed unsecured claims in such case; or

(B)

(i) 70 percent of such claims; and

(ii) the plan was proposed by the debtor in good faith, and was the debtor's best effort;

(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter;

(11) after filing the petition, the debtor failed to complete an instructional course concerning personal financial management described in section 111, except that this paragraph shall not apply with respect to a debtor who is a person described in section 109 (h)(4) or who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved instructional courses are not adequate to service the additional individuals who would otherwise be required to complete such instructional courses under this section (The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in this paragraph shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter.); or

(12) the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is reasonable cause to believe that—

(A) section 522 (q)(1) may be applicable to the debtor; and

(B) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522 (q)(1)(A) or liable for a debt of the kind described in section 522 (q)(1)(B).

24

(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

(c)

(1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.

(2) On request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;

(2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

(3) the debtor committed an act specified in subsection (a)(6) of this section; or

(4) the debtor has failed to explain satisfactorily—

(A) a material misstatement in an audit referred to in section 586 (f) of title 28; or

(B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586 (f) of title 28.

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

(1) under subsection (d)(1) of this section within one year after such discharge is granted; or

(2) under subsection (d)(2) or (d)(3) of this section before the later of—

(A) one year after the granting of such discharge; and

(B) the date the case is closed.

25

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-1457        Caption: BANE V. U.S. TRUSTEE

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's, Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

☐    this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☑    this brief uses a monospaced typeface and contains 556 [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

☐    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; or

☑    this brief has been prepared in a monospaced typeface using WORDPERFECT FOR DOS 6.0 [*identify word processing program*] in COURIER 12 [*identify font size and type style*].

(s) GARY M. BOWMAN

Attorney for APPELLANT

Dated: 16 MAY 2013

## CERTIFICATE OF SERVICE

I, Gary M. Bowman, do hereby certify that a true and correct copy of this Brief of Appellant was served through the ECF system to W. Joel Charboneau, Trial Attorney, Office of the U.S. Trustee, 210 First Street, Ste. 505, Roanoke  VA  24011 on May 20, 2013.

/s/ Gary M. Bowman